CHARLES LAWSON, Respondent, v. WILLIAM C. CUNDIFF et al., Defendants, JOHN C. SPENCER, Appellant.

### St. Louis Court of Appeals, May 16, 1899.

1. **Vendor's Lien:** WAIVER OF LIEN. The taking of personal security on promissory notes given for the purchase price of real property, by the vendor, only indicates an intention on the part of the vendor to waive the vendor's lien. It is *prima facie* evidence only of such intention, which can be rebutted.

2. **Promissory Note:** TIME WHEN DUE: DEED OF TRUST. The time when a promissory note is due is determined by the note itself, and is not dominated by the provisions of a deed of trust given to secure the note.

3. **Pleading and Practice:** ACTION: EQUITY: ANSWER. The rule of practice in this state is, that when the answer in an action at law sets up an equitable defense with a prayer for equitable relief, which a court of equity only can give, the issues made by the answer and reply should be tried and received as a case in equity.

Appeal from Lawrence Circuit Court.—*Hon. John C. Lamson*, Judge.

REVERSED AND REMANDED *(with directions)*.

(1) When John C. Spencer sold to Lawson, Lawson as part of the purchase price assumed to pay the debt to Stakely and the notes of Cundiff and Spencer to Lawrence county. By this arrangement, Lawson became the principal debtor and Spencer but the security upon these obligations as between themselves. Commercial Bank v. Wood, 56 Mo. App. 217; Wayman v. Jones, 58 Mo. App. 318; Insurance v. Hanford, 143 U. S. 147; Nelson v. Brown, 140 Mo. 589; Orrick v. Durham, 79 Mo. 179; Nelson v. Brown, 140 Mo. 500. (2) Spencer is entitled to the value of his improvements upon the

*This case was delivered to the Reporter February, 1900.

land. Martin v. Ratcliffe, 101 Mo. 258; Bank v. Grewe, 101 Mo. 629; Giraldin v. Howard, 103 Mo. 46. He is also entitled to taxes by him paid upon the land. Sampson v. Mitchell, 125 Mo. 238; Gooch v. Botts, 110 Mo. 424. (3) Appellant, as purchaser from Robert S. Spencer, succeeds to all the rights and remedies of his vendor in respect to his payments of liens and his improvements upon the land. 24 Am. and Eng. Ency. of Law 259. Appellant's plea of the statute of limitations should not have been stricken out. Session Acts of 1891, p. 184; Noell v. Gaines, 68 Mo. 649; Brownlee v. Arnold, 60 Mo. 79; Wapples v. Jones, 62 Mo. 440.

*N. Gibbs* and *Samp. Jennings* for respondent.

(1) This is an action at law under R. S. 1889, secs. 7078 and 7079 to foreclose a deed of trust. Riley v. McCord, 24 Mo. 268; Smith v. Finn, 74 Mo. 499. (2) "The fact that the answer contained an equitable defense did not change the character of the action and convert it into a case in equity. It follows that the principles governing appeals in law cases as contradistinguished from appeals in equity must control in its disposition in this court." Kerstner v. Vorweg, 130 Mo. 199; Carter v. Prior, 78 Mo. 222; Wolf v. Schaeffer, 4 Mo. App. 372. (3) "No declarations of law were given or refused, and, under the assignments of error in the motion for new trial, the sole question for review is, whether there was substantial testimony to support the finding and judgment of the court." Kerstner v. Vorweg, 130 Mo. 199 *supra*; Smith v. Finn, 74 Mo. 499; Garland v. Smith, 127 Mo. 567. (4) Stakely took personal security on the two notes given as a part of the purchase price of the land sold. The taking of personal security waives the vendor's lien. Christy v. McKee, 94 Mo. 250; Sullivan v. Ferguson, 40 Mo. 79; Routte v. Murray, 48 Mo. App. 17. (5) A purchaser under execution, "buys only.

such interest as the judgment debtor has," "and if the interest is subject to equities, although totally unknown to the buyer the title is subject to the same equities." Mann v. Best, 62 Mo. 496; Graves v. Ewart, 99 Mo. 17.

BIGGS, J.—On May 4, 1885, the plaintiff for a consideration of $1,500, sold to the defendant William C. Cundiff an undivided one-half of sixty-two acres of land upon which was located a grist mill. The conveyance was made subject to a mortgage of $300 due Lawrence county. Cundiff executed three notes for the balance of the purchase money, one for $225, one for $335, and one for $340, due respectively in six months, two years and three years after their dates, and each bearing ten per cent interest from date. To secure the notes Cundiff, who owned the other undivided half, executed a deed of trust on the entire property. On the nineteenth day of June, 1897, the plaintiff instituted the present action to foreclose the deed of trust. The following parties were made defendants, viz.: William C. Cundiff and Eliza J., his wife; John C. Spencer, who was in possession of the land claiming to own it, Jo. J. Porter, the trustee in the deed of trust, and Nancy Kellogg, who held a subsequent incumbrance on the land. At the trial the plaintiff disclaimed a right of foreclosure as to the two notes first maturing, upon the ground, as we assume, that at the date of the institution of the suit both notes were barred by the statute of limitations, no payments having been made thereon. John C. Spencer defended the action. He admitted the execution and existence of the deed of trust and that plaintiff's debt had not been paid, but he set forth in his answer facts connected with the title of the land, which if true, would, as against the plaintiff, who was a subsequent purchaser of the property, prevent a judgment of foreclosure, except upon certain terms. To fully understand the nature or purport of this equitable defense it will be necessary to state in detail the facts upon

which it is founded. On the first day of February, 1884, the property was owned by John Stakely. On that day he conveyed it to W. C. Cundiff and John C. Spencer, subject to an existing mortgage securing the payment of a debt of $300 due Lawrence county. The deed recited the payment of the consideration, to wit $2,700, whereas in fact $600 of it was not paid, for which two notes for $300 each were given, due respectively in one and two years. The notes were signed by Cundiff and Spencer as principals and by Jonathan Spencer as surety. Stakely transferred these notes to one Arminius Dobbins. On March 3, 1884, Cundiff and Spencer borrowed of Lawrence county $600, money belonging to the school fund, and to secure the debt executed a second mortgage on the property. The mortgage was duly recorded. On February 6, 1885, John C. Spencer sold his interest in the mill to plaintiff for a consideration of $1,500. The deed recites that it was sold subject to a mortgage of $300 due Lawrence county. On May 4, 1885, the plaintiff as hereinbefore stated, sold his interest to Cundiff for a stated consideration of $1,500, which plaintiff claims was paid as follows: Three hundred dollars cash, the notes mentioned in the mortgage here sought to be foreclosed, and Cundiff assumed plaintiff's portion of the $600 mortgage to the county. On the same day that plaintiff sold to Cundiff, the latter borrowed the additional sum of $300 from the county for which another mortgage was given on the mill. This money was borrowed by Cundiff to enable him to make the cash payment to plaintiff. It was alleged by defendant that by agreement of all parties the lien of this mortgage was to take precedence of that of plaintiff's deed of trust for the balance of the purchase money. Afterwards, to wit, January 13, 1886, Cundiff sold the mill property to Jonathan Lambert and Monroe Allison, subject to a mortgage of $900 due Lawrence county. One of the notes given by Cundiff and Spencer to Stakely remaining unpaid, Dobbins the holder thereof instituted a suit on it

against the makers and to enforce the alleged vendor's lien against the mill. Lambert and Allison, who were then in possession of the property, were made parties to the action. This cause was tried on the third day of September, 1886, resulting in a personal judgment against Cundiff, John C. Spencer and Jonathan Spencer, the signers of the note, and a further decree that an equitable vendor's lien existed against the mill property, for the amount due on the note, that the same should be enforced, and that a special execution should issue against the property and the same sold to satisfy the judgment and costs of suit. This was done and one Robert J. Spencer bought at the sale. His bid covered the judgment and costs of suit. The sheriff's deed to him was executed and delivered on March 2, 1887. Subsequently, to wit, November 8, 1892, Robert J. paid off the mortgage debts due the county, and on the same day he conveyed the property to John C. Spencer by deed containing the general covenants of warranty against incumbrances, etc. Supplementing these facts the answer of John C. Spencer alleged further that as a matter of law and fact an equitable vendor's lien existed and was reserved in favor of Stakely for the unpaid purchase money of the property; that at the time plaintiff purchased the interest of Spencer he was advised of the existence of the two notes given to Stakely, and that they were then owned by Dobbins, and that as part of the consideration of the sale of Spencer's interest in the property the plaintiff agreed to assume the payment of the notes. He also averred that plaintiff's purchase was made subject to the mortgages of the county. It was also set forth that while Robert J. Spencer and John C. Spencer held possession of the property, they had made permanent improvements thereon of the value of $1,000, and that they had paid the taxes on the property since 1887. The prayer of the answer was that an accounting be had as to the incumbrances paid by Robert J. Spencer and as to the alleged improvements and taxes, and that a sale of the entire title of

the property be decreed upon terms that were equitable and just to all parties in interest.

The plaintiff put in issue the new matter pleaded in the answer. The cause was tried before the court, resulting in a judgment for the plaintiff foreclosing his mortgage for the full amount of the notes. The defendant John C. Spencer has appealed.

Did an equitable vendor's lien exist in favor of Dobbins, who was the holder of the two Stakely notes? This question is at the threshold of the case. If such lien did not exist, or if it did exist and the plaintiff was not advised of it, then the alleged equities asserted by the appellant are without foundation. The plaintiff admits that he knew the notes were outstanding; that they were given to Stakely for a part of the purchase money, and that Dobbins owned them at the time the appellant sold his interest to plaintiff. Did the lien exist, or rather had it been waived, is the remaining question? The plaintiff claimed that it had been waived. As evidence of such waiver he relied on the fact that Stakely had taken personal security on the notes, and he was allowed to testify that prior to his purchase Stakely informed him that it was not his intention to reserve a lien on the land—that he preferred personal security. Against this the appellant testified to the facts stated in his answer, concerning the agreement of the plaintiff to pay the Stakely notes as part of the consideration of his purchase, and he also testified that the plaintiff attended the execution sale under the special execution in favor of Dobbins, and he there stated that as mortgagee he could not afford to bid on the property as the debts of Dobbins and the county equalled or exceeded the value of the property. The appellant also proved that after the sale under the Dobbins execution Robert J. Spencer, the purchaser at the sale ejected Lambert and Allison from the premises; that they thereupon sued the plaintiff on the covenants contained in the deed to Cundiff, and that in his answer to that suit he averred that

at the time he purchased the interest of appellant there existed a vendor's lien against the land in favor of Dobbins, and that he (plaintiff) purchased subject to it. It is clear that the alleged statement of Stakely that he had waived the lien was not competent evidence. At the time he had parted with his interest in the notes, and he could not affect them or any matter connected with them by his unsworn statements. The taking of personal security on the notes only indicated an intention on the part of Stakely to waive his vendor's lien. It was *prima facie* evidence only of such an intention, which might be rebutted. Hunt v. Marsh, 80 Mo. 396. We think this presumption or *prima facie* fact was successfully rebutted. The appellant testified that the lien was reserved; that the plaintiff bought subject to it, and the answer of the plaintiff in the Lambert-Allison case, which was written by plaintiff's attorney, expressly asserts that the lien existed. Dowzelot v. Rawlings, 58 Mo. 75; Anderson v. McPike, 86 Mo. 293.

Having determined the existence of the vendor's lien and that the plaintiff had knowledge of it and hence bought subject to it, the questions are what are the respective equities of plaintiff and the appellant, and how are they to be preserved and enforced? It is clear that the plaintiff as mortgagee is not concluded by the judgment and sale in the Dobbins suit. He was not a party to the suit. His rights as a subsequent incumbrancer were not destroyed by reason of it. Then as against the appellant upon what terms ought he to be allowed to subject the land to 'the payment of his debt? Originally his mortgage was subordinate to the claim of Dobbins and the county. If he had then foreclosed his mortgage, he would have been compelled either to have paid off these prior incumbrances, or to have sold subject to them. However, he did not attempt to do this, but waited until the land was sold under the Dobbins judgment, and he then waited until Robert J. Spencer, the purchaser at that sale had satisfied the mortgage debts in favor of the county and then he waited

until Robert J. had sold the property for a full consideration to the appellant, and then he brought this suit of foreclosure, claiming the full benefit of all moneys paid by Robert J. in satisfaction of liens to which his mortgage was subordinate. Robert J. bought subject to the mortgages of the county, which he subsequently paid in order to protect his purchase. Assuredly if he had remained the owner of the property he could have insisted on being fully reimbursed had plaintiff sought to enforce his mortgage. There can be no escape from this. The payments made by him enured to plaintiff's benefit and in making them it can not be said he acted as a mere volunteer. Can appellant assert these equities for the protection of Robert J. on his covenants of warranty to him, or must he do it in order to preserve his remedy against Robert J.? In our opinion he can and ought to do so. Robert J. conveyed the property to him by a general warranty deed. For the protection of the former the plaintiff should be allowed to enforce his mortgage only to the extent and upon terms which are just, for to that extent only can Robert J. be compelled to answer to the appellant on the covenants in his deed. The equities as we see them are that the appellant should be paid the amount bid by Robert J. at the sale under the Dobbins execution, and also the amounts paid by him in discharge of the mortgage debts due the county. These amounts must be refunded by plaintiff, or be paid out of the proceeds of the sale of the property before he can claim any benefit under his mortgage. To accomplish this the land should be ordered sold free of all incumbrances and out of the proceeds the appellant should be first reimbursed for the aforesaid amounts paid by Robert J., then plaintiff's debt should be satisfied, and the remainder, if any, should be paid to the appellant as the general owner of the land. We do not think that the appellant should be allowed interest on the amount bid and paid at the Dobbins sale, or on the amounts paid in discharge of the mortgages of the county. Nor

Riffel v. Land & Lumber Co.

should he be reimbursed for taxes paid. He and Robert J. have had the use of the mill. Neither do we think he ought to be allowed anything for improvements. Both he and Robert J. had actual notice of plaintiff's mortgage, hence they improved the property at their peril, and can not recover therefor. Stump v. Hornbeck, 15 Mo. App. 267.

The appellant's plea of the statute of limitations was properly stricken out. In Owens v. McKinzee, 133 Mo. loc. cit. 336, it was decided that the time when a note is due is determined by the note itself, and is not dominated by the provisions of a deed of trust given to secure the note. Plaintiff's mortgage provided that if default was made in the payment of any of the notes, all of them should become due and payable.

The answer of the appellant converted the action into one in equity, and it should be so reviewed. The rule of practice in this state is, that when the answer in an action at law sets up an equitable defense with a prayer for affirmative relief, which a court of equity only can give, the issues made by the answer and reply should be tried and reviewed as a case in equity. Estes v. Fry, 94 Mo. loc. cit. 271.

The judgment of the circuit court will be reversed and the cause remanded, with directions to retry the case and enter a decree in accordance with this opinion. All concur.