J. A. BIGHAM, Defendant in Error, v. J. O. TINSLEY, Plaintiff in Error.

Springfield Court of Appeals, July 7, 1910.

1. PARTNERSHIP: Accounting: Reference: Sufficiency of Evidence. In an action for an accounting between partners, which on request of both parties was referred, the evidence of the plaintiff is examined and *held* sufficient to justify the finding of the referee that on a settlement and dissolution, the defendant had agreed to repay the plaintiff the amount he had paid defendant for a half interest in the business.

2. ———: ———: Equity: Action at Law. When plaintiff's right of recovery does not arise out of a partnership between him and the defendant, but out of a contract of settlement between the partners by which the defendant is to pay for his partner's interest in the partnership properties the suit is not one in equity but at law.

3. **EQUITY: Action at Law: Equitable Defense.** In an action which is originally one at law, but in which the defendant interposed an equitable defense going to the entire claim of the plaintiff, accompanied with a prayer for relief which a court of equity alone can grant, such action becomes then triable as one in equity.

4. ———: ———: ———: **Partnership: Accounting.** Where one partner sues his former co-partner for the purchase price for his half interest in the partnership business, and the defendant in his answer alleges that plaintiff had received a large sum of money from said business, belonging to said partnership, and asked for an accounting the answer carried the case to the equity side of the court.

5. ———: **Verdict of Jury Advisory.** In an action in equity, a trial by jury does not exist, and when, in such action, a verdict is rendered by a jury on an issue of fact directed by a court of chancery, such verdict is merely advisory and not conclusive and the evidence may be examined by either the trial or appellate court.

6. **REFERENCE: Equity: Finding of Referee Advisory.** In an action in equity, made so by an equitable answer, the finding of the referee would stand on precisely the same footing as that of a jury in an equity case, that is, advisory merely.

7. **EQUITY: Reference: Review of Finding of Facts: Appeal and Error: Practice.** In equity cases, while an appellate court has jurisdiction to review the facts as well as the law, the usual practice is to defer largely to the finding of the trial court in those cases where the evidence is conflicting. This is especially true where the parties agree upon a reference and the witnesses testify orally before the referee and such testimony constitutes substantially all the evidence in the case.

8. **PARTNERSHIP: Actions: Accounting: Action for Purchase Price of Partner's Interest.** The law is well settled that an action at law cannot be brought by one partner against another for the money alleged to be due him on account of partnership transactions, until after a settlement, even though the partnership has been dissolved, but a partner may sell his interest to his co-partner and recover the purchase price in an action at law.

9. **PLEADING: Variance Between Pleading and Proof: Affidavit Required by Statute.** Plaintiff's cause of action, as made by his petition, was for a certain stock of goods, wares and merchandise sold to defendant. The evidence offered was in support of the claim for the sale of plaintiff's half interest in a partnership business, of which the goods, wares and merchandise were the stock in trade. *Held*, that the variance between the

pleading and the proof was not material, as defendant did not file an affidavit setting forth in what way he had been misled, as provided by section 655, Revised Statutes of 1899.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*Ward & Collins* for plaintiff in error.

(1)   There is an absolute variance between the plaintiff's petition and the proof adduced and a judgment for him cannot be sustained. Stix v. Matthews, 75 Mo. 96; Summers v. Rodgers, 90 Mo. 224; Wesley v. Bowers, 58 Mo. App. 422.   (2)   This is an action at law for the purchase price of goods, wares and merchandise, and cannot be maintained by one partner against his co-partner to recover money due on account of partnership transactions where no settlement of the account and business has been had. Stothert v. Knox, 5 Mo. 112; Springer v. Cabell, 10 Mo. 640; McKnight v. McCutchen, 27 Mo. 436; Smith v. Smith, 33 Mo. 537; Scott v. Caruth, 50 Mo. 120; Mulhall v. Cheatham, 1 Mo. App. 476.   (3)   The fact that the co-partnership had ceased to do business is not material, it still exists for the purpose of liquidation. Ross v. Carson, 32 Mo. App. 148; Hargadine v. Gibbins, 114 Mo. 561; Jackson v. Powell, 110 Mo. App. 249.   (4)   An unsettled partnership balance can only be reached by a bill in equity, praying an accounting. Wetmore v. Crouch, 55 Mo. App. 441.   (5)   This being an action in equity, the referee's report is not a special verdict, but the evidence can be examined, and such finding is not conclusive upon either the trial or appellate court. Plaza Hotel Co. v. Dines, 116 S. W. 1121; Heman v. Brittan, 14 Mo. App. 121; St. Louis Co. v. Bissell, 41 Mo. App. 426; O'Neal v. Capelle, 62 Mo. 202; Mack v. Wurnsell, 135 Mo. 58.   (6)   And the trial court and this court may

review the various items and allow or reject the same as it may deem proper. Smith v. Parish, 70 Mo. 615; State ex rel. v. Hurlston, 92 Mo. 327.

*Faris & Oliver* for defendant in error.

(1)   This court will not weigh the evidence nor disturb the finding of the referee, for it stands as a special verdict, when supported by substantial evidence. Martin v. Whites, 128 Mo. App. 127; Bader v. Mill Co., 134 Mo. App. 143; Grocery Co. v. Fidelity & Guaranty Co., 130 Mo. App. 424; Howard County v. Baker, 119 Mo. 397; Vogt v. Butler, 105 Mo. 479.   (2)   If the settlement was had, as the plaintiff testified, and as the referee found, then there is no variance between the pleadings and the proof.   But defendant did not in the trial below avail himself of the only procedure provided for him in section 655 R. S. 1899, and cannot now be heard to complain.   Brown v. Railroad, 50 Mo. 461; Clydesdale Horse Co. v. Bennett, 52 Mo. App. 333; Ely v. Porter, 58 Mo. 158; Randell v. Railroad, 102 Mo. App. 342; Fisher Real Estate Co. v. Staed Co., 159 Mo. 562.

NIXON, P. J.—This case was brought from the Pemiscot County Circuit Court by writ of error issued by the St. Louis Court of Appeals, and has been transferred to this court.

The petition states that from December 5, 1905, to May 23, 1906, plaintiff at the special instance and request of the defendant sold and delivered to him a certain stock of goods, wares and merchandise for the sum of $640.64, and that the articles sold as well as the prices charged appeared from an itemized statement attached to the petition.

The defendant's answer contained (1)   a general denial, (2)   that there had been a partnership existing between plaintiff and the defendant whereby they carried on a meat market, and also setting out the terms of the

original partnership agreement, and (3) that although the plaintiff had collected large sums of money for the partnership, he had failed and refused to account to the defendant as co-partner for such collections and that the plaintiff is indebted to the defendant in large sums of money by reason of the partnership. Defendant asked judgment for the amount claimed to be due him from the business, and prayed that an accounting be had between the plaintiff and defendant and the partnership dissolved, and for general relief and costs.

The reply was a general denial.

By consent of parties, the circuit court appointed a referee to examine the accounts between plaintiff and defendant and ordered him to make a finding and report to the court. In pursuance of this appointment, the referee proceeded to hear the evidence and make his findings, and duly filed his report, which is as follows:

"I, the undersigned, duly appointed referee by the circuit court of Pemiscot county, Missouri, to hear and try the issues in the above entitled cause, a certified copy of which appointment is hereto attached, do hereby report my proceedings as such referee as follows:

"I did on the 2d day of June, 1908, take the oath prescribed by law, which said oath is annexed to this report and herewith returned. And on the 25th day of August, 1908, said plaintiff, by his attorneys, Faris & Oliver, and defendant, by his attorneys, Ward & Collins, having waived notice from the referee of the time and place for the hearing of said cause, came and entered their appearance and announced themselves ready for trial, and I proceeded to hear the evidence.

"The evidence offered by both plaintiff and defendant, together with the ruling thereon, will appear by the transcript thereof hereto annexed, which, together with the exhibits offered and referred to in said hearing, make a part of this report.

"I find from the evidence thus adduced in said cause the following facts: That on the —— day of

July, 1905, plaintiff and defendant entered into a co-partnership to run a meat market in the city of Caruthersville, Mo.; that in forming said co-partnership the terms of the agreement were that plaintiff pay to the defendant a cash sum of five hundred dollars and a further sum of two hundred and fifty dollars to be paid later to defendant for an undivided one-half interest in the meat shop (consisting of tools and good will) theretofore owned and operated by the defendant; that said co-partnership so formed continued to run and do business until the —— day of December, 1905, when the same was mutually dissolved by the parties; that said co-partnership as a business venture was a failure, made no money above its expenses, and during its existence contracted numerous debts which remained unpaid at the time of its dissolution; that under the terms of the dissolution the plaintiff on his part agreed to take the accounts due the co-partnership and pay off all outstanding indebtedness due from the co-partnership and place the same amount of tools and merchandise back in the meat market to be turned over to the defendant or to make up the shortage thereof in money as were therein at the time of the formation of the co-partnership, and that he, defendant, would be held harmless on account of losses in said partnership; that defendant on his part agreed to take back the meat market or butcher shop and return to plaintiff the five hundred dollars he had paid to the defendant.

"I find that the defendant put into said partnership, in cash, the sum of $192.99, in lard and meats on hand at the time of the formation of said partnership the sum of $367.80, in cattle and hogs furnished the partnership the sum of $580.60, and in corn and hay fed to cattle and hogs belonging to the partnership the sum of $186.52, making a total of $1327.91.

"I further find that defendant got out of said partnership in cash, in meats and in payments of his individual accounts by the partnership, the sum of $837.95;

besides, I find that the defendant should also be charged with cattle taken back by him when the partnership was dissolved amounting to $135, hides amounting to $14, meats and lard on hand amount to $325; also, furniture account with plaintiff amounting to $29.35, and W. W. Wilson meat account amounting to $33.50, making a total of $1374.80. Subtracting the total amount put into the partnership by defendant from the amount by him taken, out, including the accounts herein, I find a difference of $46.89 in favor of plaintiff.

"I further find that the plaintiff sold two pairs of scales for $25 and an ice box and lard press for $110, or a total of $135, for which amount defendant is entitled to credit. Plaintiff also owes the defendant two meat accounts, one for $12.80 and one for $86.35, making a total of $99.15. I also find that the defendant paid outstanding accounts of the partnership amounting to $147.68, for which he should have credit. These amounts make a total of $382.83 for which defendant should have credit. Subtracting the $46.89 from this amount, I find a balance due the defendant, $335.94.

"I further find that the defendant has never paid the plaintiff the $500 which he agreed to pay upon the dissolution of the partnership. The $250 agreed to be paid by plaintiff to defendant was never paid. Deducting $335.94 from the $500, I find that the defendant owes the plaintiff the sum of $164.06 on a final settlement on all matters and items involved in this cause.

"I therefore recommend that judgment be rendered in favor of the plaintiff for the sum of $164.06, and for his costs.

"All of the said papers, exhibits, evidence, orders, proceedings and report are herewith returned to court, as witness my hand this the 24th day of November, 1908.

"EVERETT REEVES, Referee."

Judgment was entered for the plaintiff for the amount found by the referee to be due him, $164.06. Exceptions to the referee's report were filed and overruled and the referee's report was by the court approved. The defendant below has sued out the writ of error.

The findings of the referee were, in effect, that there had been a partnership between plaintiff and defendant in carrying on a meat market in the city of Caruthersville, and that some time in December, 1905, the firm was mutually dissolved by consent of parties, a partnership settlement was had and the stock was invoiced at $350; that the defendant took the property on hand and the business of the firm and resumed the butcher business at the old stand. There were but two witnesses to the trade who speak of the terms on which the partnership was dissolved. These terms were verbal, and the statements of the plaintiff and the defendant are wholly irreconcilable. Indeed, the evidence is indefinite and unsatisfactory, and the court in arriving at any conclusion as to the rights of the parties has to look through a glass darkly instead of being brought face to face with the facts.

I.   The defendant in error claims and the referee found that by the terms of the dissolution of the partnership between plaintiff and defendant, the defendant (below) on his part agreed to take back the meat market and return to the plaintiff the five hundred dollars that he had paid to the defendant, and the case was tried by the referee on the basis of such a settlement and this five hundred dollars was charged against the defendant. There were also other agreements made by the parties hereinafter more fully stated and considered.

The plaintiff in error claims that there was no evidence of any agreement that he was to pay the plaintiff (below) five hundred dollars as a consideration for plaintiff's interest in the partnership property. According to the abstract furnished by the plaintiff in error, the plaintiff (below) testified: "I was to take the stuff

on hand, pay the bills that the shop owed, and he, the defendant, was to take the shop back at the same price I gave for it; that is, to pay me the same amount I first put in." The plaintiff further testified as to the amount he originally put in the business: "I paid the five hundred in cash. He used Joe Latshaw as a witness that he was receiving five hundred dollars." Speaking of the conversations with the defendant after the partnership was dissolved, plaintiff, testified: "I had a talk with the defendant about the five hundred dollars. He agreed to pay it four or five times and he said he did not have time to attend to it. The last time, he said if he owed me anything he was worth the money and to sue him and he would pay it. At the various other times, he did not deny owing me the amount of the purchase price." We think this was some evidence tending to support the finding of the referee and sufficient to withstand defendant's demurrer to the evidence.

II. It is further claimed that the referee erred in charging the defendant $325 for the merchandise on hand; that is, the meat and lard in the shop at the time of the dissolution of the partnership. The plaintiff had testified that it was a part of the contract of settlement of the partnership that the plaintiff was to leave as much merchandise in the shop as he had put in when the partnership was formed, or, in case of deficiency, to put up enough money to pay the difference. At the time of the formation of the partnership, it was admitted that the defendant put into the partnership business meat and lard to the amount of $367.80. The inventory at the dissolution of the partnership showed meat and lard on hand of the value of $350. Therefore, to make the defendant equal, according to plaintiff's version of the contract as to the meat and lard, he would be required to put up in cash the sum of $17.80 as the defendant kept the $350 that was then in stock. In making his calculations on the basis of this agreement between the

partners, the referee credited the defendant with $367.80 and charged him with the amount received, $350, making the defendant pay the difference, $17.80. This was a simple mathematical calculation and required no very profound mathematical genius to arrive at the conclusion that the referee reached. While it may be said that the referee made the defendant pay $350 for the stock on hand, he credited him with $367.80 to pay it with so the plaintiff has no cause of complaint on this score.

III. Defendant insists that the court erred in overruling his exceptions to the referee's report and rendering judgment for the plaintiff on said report. The force of this assignment is mainly directed at the ruling of the referee by which the plaintiff was given judgment against the defendant, his co-partner, on a petition in an action for goods, wares and merchandise sold; otherwise stated, the charge of error being that the plaintiff was permitted in an action at law to recover against his co-partner on an unsettled partnership account.

The plaintiff's action, as stated in his petition, is inartistically drawn, but it charged an indebtedness for merchandise sold. It developed in the evidence at the trial that plaintiff's action was in reality bottomed on the amount due him by reason of the sale to his former partner of his interest in the partnership merchandise. The petition undoubtedly stated a cause of action at law and not in equity. When plaintiff's right of recovery does not arise out of a partnership between him and the defendant, but out of a contract by which his partner is to pay him for his interest in the partnership properties, the suit is not one in equity, but at law. [Crocker v. Barteau, 212 Mo. 359, 110 S. W. 1062.]

The answer in this case is in the nature of an equitable defense and pleads facts entitling the defendant to affirmative relief. It states, substantially, that

the plaintiff and defendant had been partners in running a meat market and that plaintiff had received from said business a large sum of money belonging to the partnership for which he should be held to account for to the defendant, and further, to the effect that such amount could not be determined until there had been a partnership accounting between plaintiff and defendant, and defendant in such answer asked that such an accounting be had. This answer unquestionably carried the action over to the chancery side of the court to be heard by the chancellor as a suit in equity. In an action which is originally one at law, but in which the defendant has interposed an equitable defense going to the entire claim of the plaintiff, accompanied with a prayer for relief which a court of equity alone can grant, the action becomes triable as one in equity. [Seaboard National Bank v. Woesten, 68 Mo. App. 137; Lawson v. Spencer, 81 Mo. App. 169; Pitts v. Pitts, 201 Mo. 356, 100 S. W. 1047; Hewitt v. Price, 204 Mo. 31, 102 S. W. 647.]

The fact, however, that a legal action is by an equitable answer transmuted into an action in equity does not preclude the parties plaintiff and defendant from consenting to refer the same as was done in this case. But the report of the referee in such case would not stand as a special verdict, although supported by substantial evidence. In an action in equity, trial by jury does not exist, and when, in such action, a verdict is rendered by a jury on an issue of fact directed by a court of chancery, such verdict is merely advisory and not conclusive and the evidence may be examined by either the trial or appellate court. [Bronson v. Wanzer, 86 Mo. 408; Heard v. Sack, 81 Mo. 610; Mack v. Wurmser, 135 Mo. 58, 36 S. W. 221.] So that in an equity case like the present, made so by an equitable answer, the finding of the referee would stand on precisely the same footing as that of a jury in an equity case; and his office would not be that of a trier of the

fact in the sense in which that term is used when a reference is made in a law case, but is advisory merely, and the referee's finding is interlocutory and not a definite step in a legal sense. [Bouton v. Pippin, 192 Mo. 469, 91 S. W. 149; O'Neill v. Capelle, 62 Mo. 202; Mack v. Wurmser, supra.]

The evidence justified the finding of the referee that the partnership was dissolved by mutual consent, and that the defendant was to pay plaintiff five hundred dollars for the money he had put into the partnership, that the defendant was to be made whole for his investments in the business, that the plaintiff was to place the same amount of tools and merchandise back in the shop as were put in by the defendant at the time the partnership was organized, and that the plaintiff was to take the accounts due the partnership and pay off the outstanding debts. After this agreement was made, an inventory of the stock was taken in which it was found to be of the value of $350. Thereupon, the defendant took and retained exclusive charge of the partnership property and business and assumed exclusive ownership. And while no entirely satisfactory conclusion can be reached as to the intention and agreement of the parties, the conclusion of the referee not only finds support in the testimony of the plaintiff, but is corroborated by some of the statements of the defendant while on the witness stand. "Q. You (Tinsley) may state to the court what was said in regard to your last deal whereby you get the shop back? A. Mr. Bigham said to me that he wanted to go into other business and that he was not satisfied; that he was not making anything in the butcher business, and asked me if I would take it back. There was some little talk and he mentioned that he had not made anything out of the concern and that I had lost considerable money and he told me about so much being on the books; that he would take charge of them and collect and pay all outstanding debts and I should not lose anything." In

equity cases, while an appellate court has jurisdiction
to review the facts as well as the law, the usual prac-
tice is to defer largely to the finding of the trial court
in those cases where the evidence is conflicting. The
reason for this deference is because of the superior ad-
vantages possessed by the trial court for weighing the
evidence and judging of the credibility of the witnesses,
and this is more especially true where, as in this case,
the parties have agreed upon the referee and the wit-
nesses have testified orally before him, and such testi-
mony constitutes substantially all the evidence in the
case. [Parker v. Roberts, 116 Mo. 657, 22 S. W. 914;
Mathias v. O'Neill, 94 Mo. l. c. 522, 6 S. W. 253, and cases
cited; Lins v. Lenhardt, 127 Mo. 271, 29 S. W. 1025;
Foster v. Williams, (decided this term.)]

The defendant's contention that the plaintiff was
allowed to recover judgment against his partner on an
unsettled partnership account was palpably not the con-
clusion reached by the referee and is a total misappre-
hension of the theory on which the case was tried. On
the contrary, the referee expressly found that the part-
nership business was dissolved by agreement of the part-
ners and a basis for the settlement of its affairs agreed
upon between them. This was the pivotal fact in the
settlement of this controversy. The law undoubtedly is
well settled that an action at law cannot be brought by
one partner against another for money alleged to be due
him on account of partnership transactions until after
a settlement, even though the partnership has been dis-
solved; but a partner may sell his interest to his co-
partner and recover the purchase price in an action
at law, and it is immaterial whether such interest is
incumbered or not by the terms of the partnership
agreement or whether the amount is fixed or the price
agreed upon. [Baker v. Robinson, 55 Mo. App. 171.]

When defendant in error sold his interest in the
partnership to his co-partner, such sale became conclu-
sive upon the referee and the trial court and could not

have been set aside in equity except upon an allegation of the defendant's answer that such settlement was procured by fraud or mistake. As no such issue was tendered by the answer in this case, the referee, after finding that there was a settlement between the partners, had no jurisdiction in the absence of fraud or mistake to take an accounting of the partnership affairs. The partners had authority to settle their own affairs on mutual agreement and on terms satisfactory to themselves, and such settlement became a finality until set aside by a proper proceeding.

IV. Defendant further assigns as error that there is such a variance between plaintiff's petition and proof as to prevent plaintiff from recovering, and that the judgment is erroneous by reason of such variance.

The only way this objection was raised at the trial was by presenting a demurrer to the evidence, and, after the report of the referee had been filed, by filing exceptions to the report. This objection, as will be seen, covers much of the territory over which we have already gone. As hereinbefore stated, the plaintiff's cause of action as made by his petition was for a certain stock of goods, wares and merchandise sold to the defendant, an itemized account being filed with the petition. The evidence offered by the plaintiff to support his petition was to the effect that the goods, wares and merchandise referred to had been the stock in trade of the plaintiff and defendant while they were engaged as partners in business, and that the sale referred to in the petition was the sale of his interest in such partnership goods. A variance, in order to be available to the defendant, should be a failure of plaintiff's proof in its entire scope between the issues made by the pleadings and the evidence offered in their support, and not mere discrepancies; nor can defects in an imperfect statement of a cause of action be available in this way. Our code of practice and procedure has aimed to

draw a broad distinction between form and substance, and to protect parties litigant in their substantial rights and to secure them one open and fair contest, and after that, to provide that the litigation should end. Section 655, Revised Statutes 1899, declaring the law as to variances is as follows: "No variance between the allegation in the pleading and the proof shall be deemed material, unless it has actually misled the adverse party, to his prejudice, in maintaining his action or defense upon the merits; when it shall be alleged that a party has been so misled, that fact shall be proved to the satisfaction of the court, by affidavit showing in what respect he has been misled, and thereupon the court may order the pleading to be amended upon such terms as shall be just." It will be seen from this section that no variance between the allegations of the pleadings and the proof is material unless the adverse party has been actually misled thereby, to his prejudice, and that a variance can only be taken advantage of by affidavit setting forth in what respect the complaining party has been misled; and the statute has provided that this is the only test of the materiality of the variance. No affidavit was filed by the defendant as the statute required. Under this state of the record, the variance was not material.

Finding no material error in the record, the judgment is affirmed. All concur.